FREDERICKA HOMBERG WICKER, Judge.
 

 |2This is an action by plaintiff/appellant Barkley Estates Community Association, Inc. against defendant/appellee Gregory Huskey seeking damages and an injunction. Barkley Estates-appeals the December 12, 2008 judgment granting Mr. Hus-key’s exception of no cause of action. Mr. Huskey filed an exception of no cause of action asserting that an agreement between the parties (hereinafter referred to as the “Agreement”) contained a binding arbitration clause and the allegations contained in the petition fell within the scope of the arbitration clause. Mr. Huskey argued, and the trial judge agreed, that Barkley Estates’ claims must be arbitrated pursuant to the Agreement. For the following reasons, we affirm.
 

 Procedural History
 

 On January 24, 2008, Barkley Estates filed its petition for damages and an injunction along with annexed documents. In essence, the petition alleges the following: (1) Mr. Huskey, a property owner in the Barkley Estates Subdivision, is subject to the building and construction guidelines of the Barkley Estate Community Association. (2) Mr. Huskey submitted an informal building plan to build a fence. (3) Berkeley Estates denied the request but approved a modification subject to various conditions. (4) Mr. Huskey agreed to the modified conditions. |3(5) Barkley Estates discovered Mr. Huskey was violating the conditional variance and notified Mr. Hus-key to discontinue. (5) Mr. Huskey refused to comply.
 

 
 *994
 
 Mr. Huskey admitted that he is the owner of the property in question but otherwise denied the allegations in the petition.
 

 Barkley Estates alleged that this private gated subdivision in Jefferson Parish is governed by its own building restrictions. Barkley Estates attached to its petition a purported letter from its president to Mr. Huskey stating the proposed modification conditions relative to Mr. Huskey’s request to build a fence failed to comply with the Association’s building conditions. The letter referenced Article XV Section 15.7 of the Barkley Estates’ rules, which states that every owner and occupant of any lot shall comply with section 15.7, “any applicable Supplemental Declaration, the ByLaws, and the Use Restrictions and Rules promulgated pursuant to Article X.” The rule also states that the failure to comply “shall be grounds for an action by the Association or, in a proper case, by any aggrieved lot owner(s) to recover sums due, for damages or injunctive relief, or for any other remedy available at law or in equity, in addition to those enforcement powers granted to the Association in Section 4.3.”
 

 Barkley Estates alleged that Mr. Hus-key submitted an informal building plan to build a 7 foot high solid brick fence with 30 foot wide wrought iron gates, set back 10 feet from the front property line on his two adjoining lots. According to Barkley Estates, the request was denied because solid privacy fences are not permitted within 40 feet of the front property line. Barkley Estates alleged that Mr. Huskey was approved in October 2007 to build a fence consisting of an 18 inch chain wall, 23 foot wide wrought iron gates, set back 25 feet from the front property line (even with the front of the home). However, that approval was conditioned on Mr. Hus-key’s replacing the trees that Mr. Huskey would remove, |4and Mr. Huskey’s obtaining written approval of the variance from his neighbors. Barkley Estates further alleged that on October 10, 2007, Mr. Hus-key acknowledged receiving the conditional approval and specifically agreed to the conditions. Barkley Estates contends that despite agreeing to the conditional modifications, Mr. Huskey has poured a slab/concrete foundation without prior written request, notice or approval. Moreover, Barkley Estates alleges that Mr. Huskey plans to pour a driveway on the vacant lots without prior requests, notice, or approval. Barkley Estates contends that Mr. Huskey has built a non-compliant fence, failed to replace the removed trees, and failed to obtain the written approval of the variance from his neighbors. Furthermore, Barkley Estates alleges that Mr. Huskey removed his existing driveway without prior request, notice, or approval, all in violation of the Barkley Estate building restrictions or in direct violation of the conditional variance.
 

 Barkley Estates sought the following orders from the trial court: (1) An order requiring Mr. Huskey to comply with the conditional variance, the building restrictions, and construction guidelines of Barkley Estates. (2) Enjoinment. (3) An order from the court of termination and removal of the offending fence, slab and driveway. (4) Replacement of the removed trees. (5) A written approval of Mr. Huskey’s neighbors. Barkley Estates further sought reasonable damages that are not limited to all costs incurred, including attorney’s fees, pursuant to the By-Laws of Barkley Estates.
 

 Barkley Estates filed a motion for summary judgment in which it requested a declaratory judgment and permanent injunction ordering compliance with the building restrictions and the other matters mentioned in the petition. It also asked for attorney fees.
 

 
 *995
 
 |BMr. Huskey filed peremptory exceptions of no right of action, no cause of action, and prescription. With respect to the exception of no cause of action, he argued that pursuant to the “Declaration of Covenants, Conditions and Restrictions for Barkley Estates,” which has the force of law in this case, Barkley Estates cannot ask the court to provide a remedy that is unavailable to it. Mr. Huskey asserted that Barkley Estates’ claims must be arbitrated pursuant to the Agreement. Therefore, according to Mr. Huskey, since Barkley Estates is not afforded a remedy of permanent injunction or damages as requested in the petition, Barkley Estates has stated no cause of action.
 

 The exceptions and the motion for summary judgment were heard on the same date. At the hearing, the parties argued the exceptions separately from the motion for summary judgment. On December 12, 2008, the trial judge denied the motion for summary judgment. He also granted the exception of no cause of action. He did not rule on the merits of the other exceptions because he deemed that these were moot. The only judgment before this court is the granting of the exception of no cause of action.
 

 The Exception
 

 Mr. Huskey filed an exception of no cause of action based on an arbitration agreement. In
 
 Matthews-McCracken Rutland Corp. v. City of Plaquemine,
 
 414 So.2d 756, 758, n. 4 (La.1982), the Louisiana Supreme Court noted that the objection to proceeding to trial, rather than to arbitration, may be raised by an exception of prematurity, which must be pleaded pri- or to answer. “However, the objection may also be raised by an exception of no cause of action (a peremptory exception which can be pleaded at any time), because the party has no cause of action at law when the contract expressly required settlement of contractual controversies and claims by arbitration.”
 
 Id.
 
 The Court noted: “R.S. 9:4201 and |fi4202 [the Louisiana Arbitration Law] mandate that an arbitration provision in a written contract shall be valid and enforceable. Once the court finds an agreement to arbitrate and a failure to comply therewith, the court shall order arbitration.”
 
 Id.,
 
 414 So.2d at 757 (Citation omitted).
 

 In
 
 Ackel v. Ackel,
 
 97-70, p. 5 (La.App. 5 Cir. 5/28/97), 696 So.2d 140, 143,
 
 writ denied,
 
 97-2139 (La.11/21/97), 703 So.2d 1310, this court considered a judgment granting an exception of no cause of action based on an arbitration provision in an agreement. In that case, the petition did not mention the arbitration provision. The court held: “A proper vehicle to raise this issue would have been the Exception of Lack of Subject Matter Jurisdiction or a Motion for Summary Judgment, since the introduction of evidence is permissible with those pleadings, whereas the court may only consider the four corners of the petition when ruling on the Exception of No Cause of Action.”
 

 An exception is treated as it actually is, not what it is titled.
 
 Standtlander v. Ryan’s Family Steakhouses, Inc.,
 
 34,384 (La.App. 2 Cir. 4/4/01), 794 So.2d 881, 886, 886, n. 6,
 
 writ denied,
 
 01-1327 (La.6/22/01), 794 So.2d 790,
 
 questioned on other grounds as stated in Arkel Constructors, Inc. v. Duplantier & Meric, Architects, L.L.C.,
 
 06-1950 (La.App. 1 Cir. 7/25/07), 965 So.2d 455.
 

 We first consider the nature of the exception that is actually before this court. With regard to an exception of no cause of action, no evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action.
 
 Everything on Wheels Subaru, Inc. v. Subaru South, Inc.,
 
 616 So.2d 1234, 1235 (La.1993),
 
 questioned on other grounds as stated in In re Succession of Grimmett,
 
 
 *996
 
 31,975 (La.App. 2 Cir. 3/5/99), 738 So.2d 27
 
 {citing
 
 La. C.C.P. art. 931.). This is not the case, however, with the declinatory exception of lack of subject matter jurisdiction. La.C.C.P. arts. 925(6), 929(A), 930.
 

 17AppeIIant argues that the trial judge erred by granting the exception of no cause of action because the trial judge improperly considered evidence beyond the petition.
 

 At the hearing, defendant’s counsel introduced into evidence, in connection with the exceptions, a portion of the contract, and the petition for damages without objection from appellant. Appellant alternatively argues that even considering that evidence, the plaintiff still has maintained a cause of action, relying on additional contract portions that were not formally introduced into evidence. Rather, those portions were attached to appellant’s memorandum in opposition to the exceptions. Appellant’s counsel referred to those portions at the hearing on the exceptions and the trial judge considered those portions without objection from defense counsel.
 

 In
 
 Lemieux v. Prudential Ins. Co.,
 
 416 So.2d 1347, 1348 (La.App. 1 Cir.1982),
 
 writ denied,
 
 420 So.2d 454 (La.1982), the First Circuit in determining an exception of no cause of action considered the pleadings enlarged where the insurance policy was submitted to the trial court at or prior to the hearing on the exception, and it appeared from the judgment on the exception that the policy was considered by the trial court as an exhibit.
 

 In
 
 Abshire v. Belmont Homes, Inc.,
 
 04-1200, p. 2 (La-App. 3 Cir. 3/2/05), 896 So.2d 277, 280,
 
 twit denied,
 
 05-862 (La.6/3/05), 903 So.2d 458, the court considered the exception of prematurity based on failure to arbitrate. The pertinent documents were not introduced into evidence at the hearing on the dilatory exception but were “attached to the pre-hearing memoranda filed by the litigants.” However, the Third Circuit court reviewed those documents because the litigants in that case “treated the documents as if they were introduced; therefore, [the appellate court treated] them acknowledgment as a judicial confession of the existence of the documents as evidence.”
 
 Id.
 

 |sIn
 
 Stadtlander, supra,
 
 the Second Circuit found that the petition was expanded to include the arbitration agreement and testimony offered at the hearing on the exception. However, the court also found that if the pleadings were not deemed expanded, the court “would likely treat [the exception of no cause of action] as one of subject matter jurisdiction.”
 

 In this case, both parties relied on contract portions without objection from the other party and the trial judge considered the contract in determining whether there was a cause of action. Thus, arguably the pleadings were enlarged by the evidence introduced at the hearing as well as the exhibits submitted in connection with the exception. However, we conclude that if the pleadings were not deemed expanded, we will treat the exception of no cause of action as an exception of subject matter jurisdiction. Therefore, the contract portions, which were either admitted or submitted without objection may therefore be considered in determining whether the court has subject matter jurisdiction.
 

 Ordinarily, the threshold inquiry is whether the parties have agreed to arbitrate the dispute in question.
 
 Long v. Jeb Breithaupt Design Build Inc.,
 
 44,002, p. 8-9 (La-App. 2 Cir. 2/25/09), 4 So.3d 930, 936 (Citation omitted). This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.
 
 Id.
 

 
 *997
 
 In the present case, the parties do not dispute the validity of the agreement. Thus, the issue here is whether the dispute in question falls within the scope of that arbitration agreement.
 

 Appellant argues as it did below that even considering the evidence, appellant is authorized to seek injunctive relief to enforce its building restrictions and it is not required to submit to mediation or arbitration.
 

 liiLa. R.S 9:1141.8 provides:
 

 The community documents of residential planned communities shall have the force of law between the homeowners association and the individual lot owners and as between individual lot owners. The remedies for breach of any obligation imposed on lot owners or the association shall include damages, injunctions, or such other remedies as are provided by law.
 

 Appellant relies on Article IV, Sections 4.3 and 4.4 and Article III, Section 3-1. Article IV is entitled “Rights and Obligations of the Association.” Article III is entitled “Membership and Voting Rights.” In particular, appellant relies on the following provisions: (1) “All remedies set forth in this Declaration and the By-Laws shall be cumulative of any remedies available at law or in equity.”
 
 [1]
 
 (2) “The Association shall be the primary entity responsible for enforcement of this Declaration and such reasonable rules regulating use of the Properties as the Board or its membership may adopt.”
 
 [2]
 
 (3) “The Association may exercise any right or privilege given to it expressly by this Declaration or the By-Laws, or reasonably implied from or reasonably necessary to effectuate any such right or privilege.”
 
 [3]
 

 |inThe above sections are general provisions, which authorize the Association to seek various actions regarding the Agree-
 
 *998
 
 merit. Such actions would include as appellant asserts, the authorization to seek injunctive relief to enforce its building restrictions.
 

 Appellee argues that appellant fails, however, to consider that Article XIV, “Dispute Resolution and Limitation on Litigation,” is the law between the people who live in Barkley Estates and the Barkley Estates Community Association. According to appellee, Article XIV sets forth mandatory dispute resolution procedures for handling all non-exempt claims between the Barkley Estates and the homeowners. Article XIV, Section 14.1 provides:
 

 Agreement to Avoid Costs of Litigation and to Limit Right to Litigate Disputes.
 
 The Association, Declarant, all Persons subject to this Declaration, and any Person not otherwise subject to this Declaration who agrees to submit to this Article (collectively, “Bound Parties”) agreed to encourage the applicable resolution of disputes involving the Properties, in order to avoid the emotional and financial costs of litigation. Accordingly, each Bound Party covenants and agrees that all claims, grievances or disputes between such Bound Party and any other Bound Party involving the Properties, including, without limitation, claims, grievances or disputes arising out of or relating to the interpretation, application or enforcement of his Declaration, the By-Laws, the Association rules, or the Articles (collectively “Claim”), except for those Claims authorized in Section 14.2, shall be resolved using the procedures set forth in Section 14.3 in lieu of filing suit in any court or initiating proceedings before any administrative tribunal seeking redress or resolution of such Claim.
 

 In the interpretation of contracts, the specific conti’ols the general.
 
 Corbello v. Iowa Production,
 
 02-826, p. 24 (La.2/25/03), 850 So.2d 686, 704,
 
 clarified on rehearing on, other grounds,
 
 02-826 (La.6/20/03), 850 So.2d 686 (per curiam). Therefore, we conclude that the mandatory dispute resolution provision, the more specific portion of the agreement governs over the more general portions.
 

 Appellant responds that Article XIV, 14.2 provides that certain claims are exempt from the mandatory alternative dispute procedures of mediation and | n arbitration. Appellant argues that Section 14.2(b) provides an exemption that applies here. Section 14.2(b) provides the following exemption:
 

 Any [sic] suit by the Association to obtain a temporary restraining order (or equivalent emergency equitable relief) and such other ancillary relief as the court may deem necessary in order to maintain the status quo and preserve the Association’s ability to enforce the provisions of Article IX (Architectural Standards) and Article X (Use Restrictions and Rules)[.]
 

 In this case, Barkley Estates is seeking a permanent injunction and damages. The parties disagree that the request for a permanent injunction and damages is included in the exemption. Appellant argues that the exemption should be construed broadly to encompass a permanent injunction and the specific type of damages asked for in the petition.
 

 The mandatory dispute resolution section states that its purpose is to encourage the applicable resolution of disputes involving the Properties in order to avoid the emotional and financial costs of litigation. Article XIV, Section 14.1.
 

 The exemption clearly states that it exempts a temporary restraining order, equivalent emergency equitable relief, and other ancillary relief as the court may deem necessary. However, that exemp
 
 *999
 
 tion pertains to relief a court “may deem necessary in order to maintain the status quo and preserve the Association’s ability to enforce the provisions” of the use restrictions and rules.' The action here of seeking a permanent injunction and damages is not an action to maintain the status quo and preserve the Association’s ability to enforce its use restrictions and rules. Therefore, the exemption does not apply. As such, the trial judge correctly found there was a binding alternative resolution agreement.
 

 But even if the provision is deemed ambiguous, we hold, for the reasons that follow, that under the policy of the Louisiana Arbitration Law, there was a binding alternative resolution agreement.
 

 | |2The Louisiana legislature has adopted a policy favoring arbitration.
 
 Broussard v. Compulink Business Systems, Inc.,
 
 41,276, p. 3 (La.App. 2 Cir. 8/23/06), 939 So.2d 506, 509,
 
 citing Aguil-lard v. Auction Management Corp.,
 
 04-2804 (La.06/29/05), 908 So.2d 1
 
 (Aguillard questioned on other grounds as stated in Arkel Constructors, Inc. v. Duplantier & Meric, Architects, L.L.C.,
 
 06-1950 (La. App. 1 Cir. 7/25/07), 965 So.2d 455). The Louisiana arbitration Law is contained in La. R.S. 9:4201,
 
 et seq.
 
 La. R.S. 9:4201 provides:
 

 A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
 

 La. R.S. 9:4202 allows for a stay of trial proceedings until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration. La. R.S. 9:4203 allows a party to petition the court for an order directing that arbitration proceed in the manner provided for in the agreement. La. R.S. 9:4209 grants the court jurisdiction to issue an order confirming the award “unless the award is vacated, modified, or corrected as prescribed in R.S. 9:4210 and 9:4211.”
 

 In
 
 Aguillard, supra,
 
 the court held:
 

 [E]ven when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue. Therefore, even if some legitimate doubt could be hypothesized, this Court, in conjunction with the [United States] Supreme Court, requires resolution of the doubt in favor of arbitration.
 

 04-2804 at 25, 908 So.2d at 18.
 

 11
 
 ^Conclusion
 

 In view of
 
 Aguillard,
 
 we find that the trial judge did not err in granting the exception. Accordingly, the judgment is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Section 4.3 states:
 

 Enforcement.
 
 The Association may impose sanctions for violations of this Declaration, any applicable Supplemental Declaration, the By-Laws, including a reasonable monetary fines and suspension of the right to vote and to use any recreational facilities within the Common Area. In addition, in accordance with Section 3.24 of the ByLaws, the Association may exercise self-help to cure violations and may suspend any services it provides to the Lot of any Owner who is more than 30 days delinquent in paying any assessment or other charge due to the Association. All remedies set forth in this Declaration and the ByLaws shall be cumulative of any remedies available at law or in equity. In any action to enforce the provisions of this Declaration or Association rules, if the Association prevails it shall be entitled to recover all costs, including, without limitation, attorneys fees and court costs, reasonably incurred in such action.
 

 [2]
 

 . Article III, Section 3.1 states:
 

 Function of Association.
 
 The Association shall be the entity responsible for management, maintenance, operation and control of the Area of Common Responsibility. The Association shall be the primary entity responsible for enforcement of this Declaration and such reasonable rules regulating use of the Properties as the Board or the membership may adopt pursuant to Article X. The Association shall also be responsible for administering and enforcing the architectural standards and controls set forth in this Declaration and any Design Guidelines. The Association shall perform its functions in accordance with this Declaration, the By-Laws, the Articles and the laws of the State of Louisiana.
 

 [3]
 

 .Section 4.4 provides:
 

 Implied Rights: Board Authority.
 
 The Association may exercise any right or privilege given to it expressly by this Declaration or the By-Laws, or reasonably implied from or reasonably necessary to effectuate any search right or privilege. Except as otherwise specifically provided in this Declaration, the By-Laws, the Articles, or by law, all rights and powers of the Association may be exercised by the Board without a vote of membership.