# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 15, 2022

Lyle W. Cayce
Clerk

No. 21-30005

Parkcrest Builders, LLC,

*Plaintiff*,

*versus*

Liberty Mutual Insurance Company,

*Intervenor—Appellee*,

*versus*

Housing Authority of New Orleans,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-cv-1533

Before Jolly, Elrod, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:

The Housing Authority of New Orleans and Liberty Mutual Insurance Company entered into a contract. The Housing Authority breached. Liberty then ignored the contract's dispute-resolution procedures—the post-breach rules of the game. Liberty says it's nonetheless

No. 21-30005

entitled to attorney's fees, and the district court agreed. We reverse and render.

I.

This case began in 2013, when the Housing Authority of New Orleans ("HANO") agreed to pay Parkcrest Builders, LLC ("Parkcrest") over $11 million to build affordable housing units. *Parkcrest Builders, LLC v. Hous. Auth. of New Orleans (Parkcrest I)*, No. 15-1533, 2018 WL 2766067, at *1 (E.D. La. June 8, 2018). Liberty was Parkcrest's surety. *Ibid.* For reasons not relevant here, the situation devolved and HANO terminated Parkcrest in early 2015, before the project was done. *Ibid.* Parkcrest immediately sued, alleging breach of contract under Louisiana law. *Ibid.*

Then, Liberty acted to fulfill its obligations as Parkcrest's surety. *Ibid.* Liberty and HANO executed a "Takeover Agreement," whereby Liberty stepped into Parkcrest's shoes to finish the project. *Ibid.* The Takeover Agreement incorporated by reference, with alterations not relevant here, the original contract (hereinafter the "HANO Contract"). *See id.* at *12–13 (explaining the minimal differences).

Liberty hired Parkcrest (the very same) as its completion contractor. *Id.* at *12. This did not help matters, and HANO soon terminated Liberty. On June 29, 2016, HANO sent Liberty a letter claiming that Liberty had forfeited any right to continue working on the project and requesting that it immediately relinquish control of the site. Liberty promptly acknowledged the termination in a letter of its own, maintaining the termination was wrongful.

Rather than following the contract's dispute-resolution procedures, which called the parties to try resolving disagreements out of court, Liberty filed a complaint-in-intervention in the HANO-Parkcrest litigation. After a bench trial, the district court concluded that HANO had breached both the

2

No. 21-30005

Takeover Agreement and the underlying HANO Contract by terminating Liberty for convenience after Liberty had substantially completed the project. *Id.* at *24, *25, *27. It therefore found in Liberty and Parkcrest's favor, awarded them damages, and held they owed HANO nothing. *Id.* at *36. The district court also held HANO liable to Liberty for attorney's fees, but it left those fees unquantified. *Ibid.*

HANO appealed, and we affirmed. *Parkcrest Builders, LLC v. Liberty Mut. Ins. Co. (Parkcrest II)*, 796 F. App'x 852, 852–53 (5th Cir. 2020) (per curiam). But because the district court had not yet quantified attorney's fees, our court concluded it lacked jurisdiction under 28 U.S.C. § 1291 to consider the fee award. *Ibid.* (citing *S. Travel Club, Inc. v. Carnival Air Lines, Inc.*, 986 F.2d 125, 131 (5th Cir. 1993) (explaining that a fee award is not a final judgment under 28 U.S.C. § 1291 "until the award is reduced to a sum certain")). So we dismissed the appeal of the fee award for lack of jurisdiction. *Ibid.*

On Liberty's motion, the district court then quantified its fee award. *Parkcrest Builders, LLC v. Hous. Auth. of New Orleans (Parkcrest III)*, No. 15-1533, 2020 WL 7060148, at *4 (E.D. La. Dec. 2, 2020). It awarded Liberty $526,192.25 in fees. *Ibid.*

HANO timely appealed. We have jurisdiction under 28 U.S.C. § 1291 to review the quantified fee award. *See S. Travel Club*, 986 F.2d at 131. This allows us to review not only the amount of the award, but also the propriety of awarding any fees at all. We hold Liberty is entitled to nothing.

## II.

We begin with two preliminaries: choice of law and the standard of review.

3

No. 21-30005

A.

This is a diversity case, so Louisiana law governs the issue of attorney's fees. *See, e.g.*, *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). That means we must look to the Louisiana Supreme Court—and in the absence of on-point cases, we "must make an *Erie* guess" about how that court would proceed. *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009) (quotation omitted). As relevant here, Louisiana authorizes fee shifting only if a contract or statute provides for it. *Bayou Bridge Pipeline, LLC v. 38.00 Acres, More or Less, Located in St. Martin Parish*, 320 So. 3d 1054, 1061 (La. 2021).

Our task, therefore, is to determine whether HANO owes Liberty attorney's fees under the HANO Contract and under Louisiana contract law. Contracts "must be interpreted in a common-sense fashion, [giving] to the words of the contract their common and usual significance." *Lambert v. Md. Cas. Co.*, 418 So. 2d 553, 559 (La. 1982). Contract interpretation centers on the parties' intent. *See* LA. CIV. CODE ANN. art. 2045. But the text is the first and best evidence of that intent. *See id.* art. 2046. Further, Louisiana law disfavors interpretations that render words or phrases superfluous, and a court should read each term in light of the contract as a whole. *Lobell v. Rosenberg*, 186 So. 3d 83, 89 (La. 2015).

B.

Next, the standard of review. This court reviews legal issues, including issues of contract interpretation, *de novo*. *World Fuel Servs. Sing. PTE, Ltd. v. Bulk Juliana M/V*, 822 F.3d 766, 770 (5th Cir. 2016). But we review the district court's factual findings only for clear error. *See Kristensen v. United States*, 993 F.3d 363, 367 (5th Cir. 2021). A finding is clearly erroneous if it's not supported by substantial evidence. *Ibid.*

4

No. 21-30005

This case involves two relevant questions. One is a pure question of law: whether HANO's initial breach excused Liberty from any obligation to follow the contract's dispute-resolution procedures. *See Parkcrest III*, 2020 WL 7060148, at *3. We review it *de novo*.

The other is a pure question of fact: whether HANO refused to acknowledge its own termination of Liberty. *See id.* at *3–4. We review it for clear error.

## III.

We now consider the merits. We first explain (A) that Liberty breached the contract's dispute-resolution procedures. Then we hold (B) this breach was unexcused. Finally, we conclude (C) Liberty is entitled to no attorney's fees. For that reason, we need not address the parties' other contentions, including their dispute about the scope of the fee-shifting clause.

## A.

In this section, we hold that Liberty breached the dispute-resolution requirements of Clauses 31 and 34 in the HANO Contract. We begin by (1) laying out Clause 31's requirements and explaining Liberty's failure to comply with them. Then we (2) do the same with Clause 34.

## 1.

Clause 31, entitled "Disputes," starts by giving the word "claim" a broad definition. Clause 31(a) explains that "'[c]laim,' as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." It goes on to distinguish between "[a] claim arising under the contract" and "a claim relating to the contract" and spells out certain exclusions not relevant here.

No. 21-30005

Clauses 31(b) and (c) are the crucial pair—they directly impose the obligations Liberty violated. The former requires, with exceptions not relevant here, that "all disputes arising under or relating to this contract, *including any claims for damages for the alleged breach thereof* which are not disposed of by agreement, shall be resolved under" Clause 31. Clause 31(c) requires that all "claims by the Contractor" (here, that means Liberty) be "made in writing and submitted to [HANO's] Contracting Officer for a written decision." Submitted claims "shall be subject to a written decision by the Contracting Officer." Clause 31(d) imposes a reciprocal requirement on HANO: It requires HANO's Contracting Officer to "decide the claim or notify [Liberty] of the date by which the decision will be made" within sixty days of receiving the claim.

Clauses 31(e) and (f) give teeth to the Contracting Officer's claim-resolution power. The former makes the decision of HANO's Contracting Officer "final unless" Liberty either (1) appeals in writing to HANO itself, (2) seeks mediation or arbitration, or (3) "files suit in a court of competent jurisdiction." And 31(f) sums up by requiring Liberty to "comply with any decision of the Contracting Officer" and to "proceed diligently with [the] performance of this contract" while a claim is pending resolution.

Liberty breached Clause 31(c). Liberty was obligated to bring its breach claim to HANO's Contracting Officer "in writing . . . for a written decision." Instead, Liberty brought its claim directly to the district court by moving to intervene and filing its complaint-in-intervention.

Filing a complaint in court does not amount to submitting the claim to HANO's Contracting Officer for a "written decision" *by that officer*. The plain text makes that clear. And context bolsters this conclusion: 31(e) makes the Contracting Officer's decision "final *unless*," among other things, Liberty takes HANO to court. If Clause 31 were compatible with Liberty

6

No. 21-30005

taking HANO to court first, that finality provision would be superfluous. *See Lobell*, 186 So. 3d at 89 ("[A] contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective."). We therefore hold that Liberty breached Clause 31.

2.

Clause 34 is entitled "Termination for Convenience." Clause 34(a) starts by giving HANO the option to end the contract "whenever the Contracting Officer determines that such termination is in the best interest of" HANO. It also directs that HANO "shall" effect "[a]ny such termination" by giving Liberty a "Notice of Termination specifying the extent to which the performance of the work under the contract is terminated, and the date upon which such termination becomes effective."

Clause 34(b) outlines HANO's liability upon terminations-for-convenience, and it explains the procedure Liberty is supposed to follow to present a post-termination claim. Because HANO undisputedly terminated Liberty for convenience, this clause is crucial. In relevant part, 34(b) reads as follows:

> If the performance of the work is terminated, either in whole or in part, [HANO] shall be liable to [Liberty] for reasonable and proper costs resulting from such termination *upon the receipt by [HANO] of a properly presented claim* setting out in detail: . . . (4) the actual or estimated cost of legal and accounting services reasonably necessary to prepare and present the termination claim to [HANO].

Clause 34(c) then obliges HANO's Contracting Officer to "act on [Liberty's] claim within [sixty days] of receipt of [Liberty's] claim." And finally, Clause 34(d) incorporates Clause 31 by "expressly" making "[a]ny

disputes with regard to this clause . . . subject to the provisions of the Disputes clause of this contract."

Because Clause 34 incorporates Clause 31 by reference, Liberty breached the former by breaching the latter. Liberty resists this conclusion by arguing that Clause 34 provides an *alternative* means of dispute resolution, and that Liberty satisfied Clause 34's looser and freestanding requirements. But that's wrong for the same reasons discussed above: Clause 34(d) expressly subjects Clause-34 disputes to the procedures of Clause 31, and Clause 34(b) requires "a properly presented claim"—not just any old claim presented in any old way. Liberty's mere service of its complaint-in-intervention on HANO did not amount to a "properly presented claim" within the meaning of Clause 34(b). We therefore hold that Liberty breached Clause 34 too.

## B.

Liberty argues that, even if it breached the dispute-resolution clauses, its breach was excused. It argues that (1) HANO's initial, unjustified decision to terminate Liberty excuses Liberty's subsequent noncompliance. In the alternative, it argues that (2) HANO was really the first to breach the dispute-resolution clauses. We address and reject each argument.

### 1.

It's undisputed that HANO's termination of Liberty—after Liberty had substantially performed—was a breach. *See Parkcrest I*, 2018 WL 2766067, at *27 (holding that HANO had breached). The district court held, and Liberty now argues, that *that* initial breach excused Liberty from any obligation to follow the contract—including Clauses 31 and 34. *Parkcrest III*, 2020 WL 7060148, at *3 (citing *Com. Ins. Agency, Inc. v. Hogue*, 618 So. 2d 1048, 1052 (La. App. 1st Cir. 1993) ("[W]here one party substantially breaches a contract, the other party to it has a defense and an excuse for

nonperformance.")); *see also Silverman v. Caddo Gas & Oil Co.*, 54 So. 289, 290 (La. 1911) (laying out a similar rule).

That's incorrect. The plain text of Clause 31 shows it's meant to be binding even after a breach. Start with 31(b). That provision explicitly subjects, with exceptions not relevant here, "all disputes arising under or relating to this contract, *including any claims for damages for the alleged breach thereof* which are not disposed of by agreement," to Clause 31's dispute-resolution procedures. Consider also 31(a), which defines "claim" broadly to include any "written demand . . . by one of the . . . parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." That definition obviously encompasses breach claims. And 31(a) goes on to clarify that undisputed "voucher[s], invoice[s], or other routine request[s] for payment" *don't* count as "claims." That suggests the parties knew how to make exclusions from the contract's broad definition of "claim." So it's telling that the parties didn't exclude breach claims.

Further, Liberty's preferred reading would render Clauses 31 and 34 useless just when they are needed most. These provisions kick in when things go south, including when one party breaches. Liberty maintains, however, that HANO's *initial* breach eviscerated Liberty's duty to follow them. In other words, Liberty says the dispute-resolution clauses are binding—until a dispute arises. That can't be right. *See Lobell*, 186 So. 3d at 89 (non-superfluity canon).

State-court precedent does not help Liberty either. It's true that "where one party substantially breaches a contract, the other party to it has a defense and an excuse for nonperformance." *Hogue*, 618 So. 2d at 1052; *Parkcrest III*, 2020 WL 7060148, at *3. But it does not follow that one party's breach excuses the other party from the contract's dispute-resolution

provisions. Take, for example, *Barkley Estate Community Ass'n, Inc. v. Huskey*, 30 So. 3d 992 (La. App. 5th Cir. 2010). There, a homeowner's association sued a resident for breach of contract. *Id.* at 993. The resident moved for summary judgment on the ground that there was a dispute-resolution clause of sorts (namely, an enforceable arbitration agreement). *Id.* at 993–95, 999. The trial court granted that motion, and the appeals court affirmed. *Ibid.* The arbitration clause was enforceable as written—regardless of whether the resident breached first. *Id.* at 995–98.

So too here. HANO's initial breach of the contract did not excuse Liberty's noncompliance with the contract's dispute-resolution procedures.

2.

Liberty alternatively argues HANO breached the contract's dispute-resolution procedures first, thus excusing Liberty's nonperformance. Liberty offers two arguments. Both are meritless.

First, Liberty says HANO never sent a "Notice of Termination" as required by Clause 34(a). But the record undercuts this argument in stunning fashion. On June 29, 2016, HANO sent a termination letter to Liberty. As required by Clause 34(a), that letter specified the extent of the termination (complete) and the effective date (tomorrow). Liberty's response letter expressed that "Liberty considers this a wrongful termination"—thereby acknowledging the termination for what it was. Liberty's own complaint-in-intervention even alleged that "on June 29, 2016, HANO wrongfully terminated Liberty from the Project." Thus, HANO plainly satisfied Clause

No. 21-30005

34(a)'s notice requirement. The district court's contrary conclusion was clearly erroneous.*

Second, Liberty faults HANO for violating two smaller dispute-resolution provisions. Clause 31(d) requires the Contracting Officer to "decide the claim or notify [Liberty] of the date by which the decision will be made" within sixty days of receiving the claim. And 34(c) requires HANO's Contracting Officer to act on (among other things) breach claims within sixty days of receipt. Liberty says HANO's Contracting Officer did neither of those two things.

That's both true and irrelevant. It's true that HANO's Contracting Officer didn't act on Liberty's claim in accordance with Clauses 31(d) and 34(c). But Liberty never *submitted* those claims to HANO to begin with—instead, it chose to disregard Clauses 31(d) and 34(c) and head straight to court. Liberty now points its finger at HANO for failing to properly respond to the very claim Liberty failed to submit to HANO. And it offers no explanation for how HANO's Contracting Officer was supposed to handle a claim HANO didn't *have*. Both Louisiana law and common sense say Liberty can't force HANO to deviate from the dispute-resolution procedures and then blame HANO for the deviation. *See Hogue*, 618 So. 2d at 1052 ("[W]here one party substantially breaches a contract, the other party to it has a defense and an excuse for nonperformance.").

---

* The parties' only disagreement centered on whether Liberty had first abandoned the project—and thus whether HANO was justified in terminating. The district court's *Parkcrest III* opinion also appeared to conflate the termination's *existence* with the termination's *justification*. (And nearly every page of Liberty's brief suffers from the same conceptual mistake.) But the record is clear: Everyone knew that HANO had terminated Liberty. We conclude HANO complied with Clause 34(a) by providing Liberty with a detailed Notice of Termination.

## C.

Finally, we turn to attorney's fees. HANO owes none.

Liberty's claim for fees arises from Clause 34(b) of the contract. As noted above, that clause authorizes fee-shifting "upon the receipt by [HANO] of a *properly presented* claim." *See supra* at 7 (block-quoting the clause).

As explained in Part III.A, however, Liberty failed to properly present a claim to HANO. Because HANO never received a properly presented claim, it cannot be liable for fees under the text of Clause 34(b). *See* LA. CIV. CODE ANN. art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

The judgment of the district court is REVERSED, and judgment is RENDERED for HANO.