# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2024 CA 0724

## SOUTHEAST DIRT, L.L.C.

### VERSUS

## D.R. HORTON, INC. – GULF COAST

*DATE OF JUDGMENT:*   DEC 2 7 2024

ON APPEAL FROM THE TWENTY FIRST JUDICIAL DISTRICT COURT
PARISH OF TANGIPAHOA, STATE OF LOUISIANA
NUMBER 2022183, DIVISION E

HONORABLE JUDGE BRENDA BEDSOLE RICKS

* * * * * *

Danial C. Vidrine
Baton Rouge, Louisiana

Counsel for Plaintiff-Appellee
Southeast Dirt, L.L.C.

Edward J. Laperouse, II
Laura E. Marcantel
Christopher M. Patin
Baton Rouge, Louisiana

Counsel for Defendant-Appellant
D.R. Horton, Inc. – Gulf Coast

Jason A. Bonaventure
Gonzales, Louisiana

* * * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

**Disposition: INTERLOCUTORY RULINGS AFFIRMED; DEFAULT JUDGMENT VACATED. REMANDED.**

**CHUTZ, J.**

Defendant-appellant, D.R. Horton, Inc. – Gulf Coast (DRH), appeals the trial court's default judgment in favor of plaintiff-appellee, Southeast Dirt, L.L.C. (SE Dirt), awarding the amount due on an open account and attorney fees. DRH also challenges the trial court's ruling, which denied an order of arbitration. For the following reasons, we affirm the interlocutory ruling, vacate the default judgment, and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

SE Dirt filed a petition on an open account on January 21, 2022, averring that DRH failed to pay for labor and materials SE Dirt had supplied pursuant to a construction contract between the parties signed on January 11, 2021. On September 20, 2022, SE Dirt filed a motion to lift stay, alleging that a stay had previously been ordered by the trial court based on an agreement between the parties to mediate but despite multiple requests by SE Dirt to agree on a mediator, DRH had not agreed on either a date for mediation or the name of a mediator. A hearing was held on February 23, 2022, at which it was determined that DRH never filed the order for a stay but to the extent a stay existed, the trial court granted SE Dirt's motion.

On May 1, 2023, SE Dirt sought a default judgment against DRH. At the hearing, documentary and testimonial evidence was adduced after which the trial court signed a default judgment, awarding SE Dirt the sum of $241,327.75 on an open account and attorney fees in the amount of $72,398.32. On May 5, 2023, DRH filed a motion to set aside and vacate the trial court's ruling, nullify and vacate the default judgment, cancel the mortgage inscription, and for sanctions. DRH followed the motion with an ex parte motion seeking to expedite the hearing on its May 5, 2023 motion. SE Dirt voluntarily vacated the May 1, 2023 default judgment in an order signed by the trial court on May 12, 2023.

2

On June 13, 2023, DRH filed into the record, a dilatory exception of prematurity or, alternatively, a peremptory exception of no cause of action, with attachments, contending that in October 2020, the parties entered into the INDEPENDENT CONTRACTOR AGREEMENT (ICA), which required that they complete mediation or arbitration as a condition precedent to the filing of a lawsuit. DRH requested dismissal of SE Dirt's lawsuit or a stay of proceedings until the parties participated in arbitration. That same day, DRH also filed a motion to stay proceedings pending mediation and arbitration. According to the allegations of DRH's motion, "[t]he parties have conferred and agreed to mediate the claims arising from the ICA, which [was] ... set for June 27, 2023." In an order dated June 30, 2023, the trial court set the motion for hearing. Thereafter, the parties filed pleadings related to discovery.

A hearing was held on August 21, 2023, to address the sanctions DRH sought in conjunction with its motion to set aside the May 1, 2023 default judgment, DRH's exceptions, DRH's motion to stay proceedings pending mediation and arbitration, and the discovery matters. At the commencement of the hearing, Judge Brian K. Abels of Division D announced his self-recusal to avoid the appearance of impropriety because his secretary's husband and his company were represented by counsel for DRH in a separate matter.

The litigation was reallotted to Judge Brenda Ricks of Division E and, by joint motion, all matters that had been set for the August 21, 2023 hearing were reset for hearing on November 20, 2023. After SE Dirt presented evidence, the trial court ascertained that the mediation to which the parties had agreed had not occurred and ruled that it was not going to order arbitration. DRH filed a supervisory writ with this court "concerning the ruling rendered in open court ... on November 20, 2023," which overruled DRH's dilatory exception of prematurity or alternative peremptory

3

exception of no cause of action. This court and the Louisiana Supreme Court denied writs. See *Southeast Dirt, L.L.C. v. D.R. Horton, Inc. – Gulf Coast*, 2024-0019 (La. App. 1st Cir. 2/26/2024) (unpublished writ action), writ denied, 2024-00397 (La. 5/29/24), 385 So.3d 704.

During the pendency of the writ with this court, DHR filed a motion to stay proceedings pending resolution of the writ. That matter was set for hearing on February 20, 2024. The trial court denied the stay. At the February 20, 2024 hearing, the trial court also addressed outstanding motions that were not ruled upon at the November 20, 2023 hearing. Judgments in conformity with these rulings were subsequently signed by the trial court on March 11, 2024.[1]

On March 11, 2024, SE Dirt presented documentary and testimonial evidence in support of a default judgment against DRH. At the conclusion of the hearing, the trial court determined the matter was an open account and awarded the principal sum of $241,327.75 and attorney fees of $96,531.10. A default judgment was signed by the trial court on March 15, 2024. The trial court subsequently denied DRH's expedited motions to vacate and for a new trial of the default judgment. DRH appeals.

## INTERLOCUTORY RULINGS ON ARBITRATION

When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. *Judson v. Davis*, 2004-1699 (La. App. 1st Cir. 6/29/05), 916 So.2d 1106, 1112, writ denied, 2005-1998 (La. 2/10/06), 924 So.2d 167.

---

[1] In addition to the denial of DRH's motion to stay proceedings pending resolution of the supervisory writ, on March 11, 2024, the trial court signed judgments denying DRH's motion for a protective order, denying SE Dirt's motion for sanctions, and granting SE Dirt's motion to deem requests for admission admitted and compel discovery by DRH within 30 days. The trial court also signed a written judgment overruling DRH's dilatory exception of prematurity or alternative peremptory exception of no cause of action.

4

DRH initially challenges the trial court's conclusion that SE Dirt's claims were not subject to arbitration. Specifically, DRH maintains the trial court's overruling of the prematurity and alternative no cause of action exceptions was erroneous.[2] The gist of DRH's contention is that the provisions set forth in the ICA apply to the claims asserted by SE Dirt in this lawsuit and that under the ICA provisions, the determination of whether SE Dirt's claims are subject to arbitration is properly made by the arbitrator.

The objection of prematurity raises the issue of whether the judicial cause of action has yet come into existence because some prerequisite condition has not been fulfilled. The viability of the exception is determined by the facts existing at the time the lawsuit is filed. Stated differently, the dilatory exception raising the objection of prematurity questions whether the cause of action has matured to the point where it is ripe for judicial determination. *McCain v. Lewis Companies, Inc.*, 2019-0416 (La. App. 1st Cir. 2/6/20), 302 So.3d 1145, 1153. The party raising the exception bears the burden of proof. See *Gordon v. Pointe Coupee Health Serv. Dist. One*, 2009-2202 (La. App. 1st Cir. 8/11/10), 47 So.3d 565, 570, writ denied, 2010-2067 (La. 11/12/10), 49 So.3d 894.

Appellate courts generally review a trial court's decision concerning an exception of prematurity for manifest error. *Benoit v. Benoit*, 2021-0865 (La. App. 1st Cir. 2/25/22), 341 So.3d 573, 579, writ denied, 2022-00704 (La. 6/22/22), 339 So.3d 1185. But the determination of whether to compel arbitration is a question of law; therefore, appellate courts conduct a de novo review. *Browne v. Gordon McKernan Injury Attorneys, LLC*, 2022-0840 (La. App. 1st Cir. 1/11/23), 361 So.3d 34, 37.

---

[2] Having ascertained that the mediation scheduled for June 27, 2023 had not occurred, by ruling against issuance of an order of arbitration, the trial court also effectively denied DRH's motion to stay proceedings pending mediation and arbitration, a determination for which DRH did not seek a supervisory writ and does not directly challenge in this appeal. Thus, we disagree with DRH's suggestion that the trial court failed to rule on the motion.

When the issue of whether to stay a proceeding pending arbitration is raised by the exception of prematurity, the party pleading the exception has the burden of showing the existence of a valid contract to arbitrate. *Id.* The threshold inquiry is whether the parties have agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and if so, (2) whether the dispute in question falls within the scope of the arbitration agreement. See *Breaux v. Stewart Enterprises, Inc.*, 2004-1706 (La. 10/8/04), 883 So.2d 983, 983 (per curiam) (citing *Collins v. Prudential Ins. Co.*, 99-1423 (La. 1/19/00), 752 So.2d 825, 831). There is a strong presumption favoring the enforceability of arbitration clauses, both under Louisiana and federal law. *Browne*, 361 So.3d at 37.

The peremptory exception of no cause of action questions whether the law affords the plaintiff any remedy under the allegations of the petition. The exception of no cause of action is triable only on the face of the petition and any attached documentation, and no evidence may be introduced to support or controvert the objection. The trial court must presume all well-pleaded facts are true, must make all reasonable inferences in favor of the nonmoving party, and must resolve any doubts in favor of the petition's sufficiency. An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim that would entitle him to relief. The burden of demonstrating that a petition fails to state a cause of action is on the exceptor, and an appellate court reviews a denial of an exception of no cause of action de novo. *Midland Funding LLC v. Welch*, 2022-0823 (La. App. 1st Cir. 2/24/23), 361 So.3d 1022, 1026. The objection to proceeding to trial, rather than to arbitration, may be raised by an exception of no cause of action because the party has no cause of action at law when the contract expressly required settlement of contractual controversies and claims by

6

arbitration. *Barkley Estate Community Ass'n, Inc. v. Huskey*, 2009-268 (La. App. 5th Cir. 1/12/10), 30 So.3d 992, 995, relying on *Matthews-McCracken Rutland Corp. v. City of Plaquemine*, 414 So.2d 756, 758 n.4 (La. 1982).

The ICA, which the parties entered into on October 20, 2020, states in pertinent part:

> **This Agreement is entered on a blanket basis. The terms of the Agreement shall govern all** current and **future work** of Contractor for Owner. **The work** to be performed under this Agreement (the "Work") **shall include all work performed and materials supplied** by Contractor to Owner, including but not limited to the labor, services, and/or materials, equipment, transportation, or facilities necessary to complete the activities generally described in Exhibit A.

Section 13 of the ICA, entitled "**ALTERNATIVE DISPUTE RESOLUTION**," further delineates the procedure by which disputes are to be resolved between the parties, providing:

> 13.1 **Disputes**. *All disputes, whether existing now or arising in the future between them, related in any way* to this Agreement, *to Contractor's Work*, or to any dispute that Owner or Contractor shall have with any third party related to the Work ("Disputes") *shall be subject to Alternative Dispute Resolution....*

> 13.2 **Mediation**. If a Dispute cannot be settled through negotiation, Owner and Contractor may agree in good faith to settle the Dispute by mediation. Cost of mediation shall be shared equally by the parties. *Notwithstanding the foregoing, a party need not resort to mediation before seeking equitable relief from an arbitrator or a court of appropriate jurisdiction.*

> 13.3 **Arbitration**. *If mediation fails, the Dispute shall be submitted to binding arbitration* under the Federal Arbitration Act, 9 U.S.C. 1 et seq., regardless of any other choice of law provision in any underlying contract or this Agreement. All demands for arbitration shall be made before the expiration of the applicable prescriptive period. The award rendered by the arbitrator(s) shall be final, and judgment may be entered upon it in any court of competent jurisdiction....

> 13.5 **Rules.** To the extent not in conflict with the Federal Arbitration Act, any mediation and arbitration shall be conducted in accordance with the Construction Industry Arbitration Rules and Mediation Procedures of the American Arbitration Association ("AAA") and shall follow settled law in rendering a decision, except that any mediation or arbitration shall be administered by the mediator or the arbitrator(s) and not by the AAA. [Emphasis added.]

7

In Section 16, entitled "**GENERAL CONTRACT PROVISIONS**," the ICA expressly sets forth that "no provision of this Agreement may be amended or supplemented except in writing signed by both Owner and Contractor" and provides that in the event of a conflict between the ICA and the terms of any purchase order or other agreement or document pertaining to the "Work," the ICA controls.

On January 11, 2021, the parties entered into another agreement, entitled **CONTRACT BETWEEN OWNER AND CONTRACTOR**, for various civil improvements for Fox Hollow subdivision (the Fox Hollow contract). It is undisputed and review of the contract shows that there is no express mention of alternatives for dispute resolution in the later dated contract.[3]

Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. See La. C.C. art. 1983; ***Brown v. McGinity***, 2021-1405 (La. App. 1st Cir. 7/14/22), 347 So.3d 900, 905, writ denied, 2022-01239 (La. 11/8/22), 349 So.3d 575. Interpretation of a contract is the determination of the common intent of the parties. Thus, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. Moreover, the parties are free to contract for any object that is lawful. See La. C.C. art. 1971; ***Brown***, 347 So.3d at 906. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. When the words of a contract are clear and explicit and lead to no

---

[3] At the November 20, 2023 hearing. SE Dirt sought to introduce an unsigned, undated, and never-before-produced document entitled "**TERMS & CONDITIONS**" between Duplantis Design Group (the Fox Hollow project engineer) and its unidentified "Client." DRH objected to its introduction on the basis of relevancy. See La. C.E. art. 402. Although the trial court did not rule on the objection or order the exhibit entered into evidence, the minutes from the hearing reflect that it was in fact filed into the record. Our review of the document shows that it has nothing to do with SE Dirt, the Fox Hollow contract, the ICA, or this litigation as a whole. It is the project engineer's proposed terms and conditions for its client, DRH. Further, it is unsigned, undated, and marked as "proposal," and there is no evidence that, even if it were relevant, it was actually executed and in effect. Therefore, it does not support SE Dirt's suggestion of a conflict between the Fox Hollow contract and the ICA regarding resolution of disputes it may have with DRH.

absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046; *Prejean v. Guillory*, 2010-0740 (La. 7/2/10), 38 So.3d 274, 279.

Reading the two contracts together, because the Fox Hollow contract -- and the open account sum generated by that agreement -- is among "all work performed and materials supplied by [SE Dirt] to [DRH]," it appears to fall within the "blanket" basis that SE Dirt entered into the ICA. And since the open account sum SE Dirt seeks from its performance of the Fox Hollow contract is presumably among "[a]ll disputes, whether existing now or arising in the future between [the parties], related in any way to ... [SE Dirt's] Work," the Fox Hollow contract may fall within the ambit of Section 13.1 of the ICA, mandating Alternative Dispute Resolution. However, Section 13.2 of the ICA allows, **but does not require**, the parties (after unsuccessful negotiation) to agree in good faith to settle the dispute by mediation. Importantly, Section 13.2 provides that a party need not resort to mediation before seeking equitable relief from either an arbitrator or a court of appropriate jurisdiction. Thus, to the extent that ICA controls the parties' disputes, under its plain language it clearly does not mandate either mediation or arbitration. By its explicit terms in Section 13.2, mediation can be excluded as an alternative resolution to a dispute and equitable relief can be sought in a court of appropriate jurisdiction, which is what SE Dirt has done by filing its petition on an open account. Thus, DRH failed to show a valid arbitration agreement. Accordingly, we conclude that the trial court correctly determined that DRH was not entitled to an order of arbitration and properly overruled both the dilatory exception raising the objection of prematurity and its alternative peremptory exception objecting on the basis of no cause of action.

**NOTICE OF INTENT TO OBTAIN A DEFAULT JUDGMENT**

La. C.C.P. art. 1702 provides in relevant part:

A. (1) If a defendant in the principal or incidental demand fails to answer or file other pleadings within the time prescribed by law or by the court, and the plaintiff establishes a prima facie case by competent and admissible evidence that is admitted on the record, a default judgment in favor of the plaintiff may be rendered, provided that notice that the plaintiff intends to obtain a default judgment is sent if required by this Paragraph, unless such notice is waived. ...

(2) If a party who fails to answer has made an appearance of record in the case, notice that the plaintiff intends to obtain a default judgment shall be sent by certified mail or actually delivered to counsel of record for the party, or if there is no counsel of record, to the party, at least seven days before a default judgment may be rendered.

(3) If an attorney for a party who fails to answer has contacted the plaintiff or the plaintiff's attorney in writing concerning the action after it has been filed, notice that the plaintiff intends to obtain a default judgment shall be sent by certified mail or actually delivered to the party's attorney at least seven days before a default judgment may be rendered. ...

(5) No default judgment shall be rendered against a defendant when notice is required under Subparagraph (2) or (3) of this Paragraph unless proof of the required notice is made in the manner provided by R.S. 13:3205.

Thus, pursuant to the current version of Article 1702, a default judgment may be rendered provided that a notice of intent to obtain a default judgment is sent if statutorily required.

On appeal, SE Dirt points to a letter it introduced into evidence at the default judgment hearing. The letter, addressed to DRH's attorney and dated June 6, 2023, states that it was sent by certified mail and advises SE Dirt is "putting you on Notice that [SE Dirt] intends to obtain a default judgment against [DRH]." SE Dirt attached to its letter, a USPS Tracking confirmation indicating delivery. The USPS confirmation did not include the street address or the recipient to whom the item had been mailed, noting only that it had been "delivered to the front desk, reception area, or mail room at 3:16 p.m. June 7, 2023 in BATON ROUGE, LA

70809." With this showing, SE Dirt maintains that it satisfied the notice of intent requirements of Article 1702.

Our review of the record shows that as of the March 11, 2024 hearing, DRH had not answered the lawsuit. DRH had made numerous appearances of record prior to SE Dirt's June 6, 2023 letter, mostly in attempts to have the matter removed to arbitration.[4] Moreover, the record is replete with email correspondence between counsel for SE Dirt and counsel for DRH prior to SE Dirt's June 6, 2023 letter. Therefore, DRH was a party who failed to answer that had made an appearance of record in the case, and SE Dirt was required to send a notice of its intent to obtain a default judgment by either certified mail or actually delivering the notice to DRH's counsel pursuant to Subparagraph (2). Also, DRH was required to send a notice of its intent to obtain a default judgment by either certified mail or actually delivering the notice to DRH's counsel pursuant to Subparagraph (3) since DRH, having failed to answer, had contacted SE Dirt's attorney in writing concerning the action after it has been filed.

Since the notice of intent was required under either or both Subparagraph (2) or (3), to properly demonstrate entitlement to a default judgment, under Subparagraph (5) of La. C.C.P. art. 1702, SE Dirt was further required to offer into evidence the proof that the mandated notice was made in the manner provided by La. R.S. 13:3205.

According to La. R.S. 13:3205:

> No default judgment may be rendered against the defendant and no hearing may be held on a contradictory motion, rule to show cause, or other summary proceeding, except for actions pursuant to R.S. 46:2131 et seq., until thirty days after the filing in the record of the affidavit of the individual who has done any of the following:

---

[4] An appearance of record includes filing a pleading, appearing at a hearing, or formally enrolling as counsel of record. *Sam v. Feast*, 2000-1163 (La. App. 1st Cir .3/28/01), 802 So.2d 680, 683.

11

(1) Mailed the process to the defendant, showing that it was enclosed in an envelope properly addressed to the defendant, with sufficient postage affixed, and the date it was deposited in the United States mail, to which shall be attached the return receipt of the defendant.

(2) Utilized the services of a commercial courier to make delivery of the process to the defendant, showing the name of the commercial courier, the date, and address at which the process was delivered to the defendant, to which shall be attached the commercial courier's confirmation of delivery.

(3) Actually delivered the process to the defendant, showing the date, place, and manner of delivery.

The record is devoid of the affidavit of the individual who mailed the June 6, 2023, certified letter stating SE Dirt's intent to obtain a default judgment against DRH. Thus, SE Dirt failed to comply with the notice of intent provisions of La. C.C.P. art. 1702(A)(5). Because proof of the notice of intent is mandated by Subparagraph (5), we conclude that proof -- as set forth in La. R.S. 13:3205 -- is a necessary element for a plaintiff to establish compliance with the notice of intent required to obtain a default judgment. Absent the mandated proof, the default judgment rendered in favor of SE Dirt on March 11, 2024 is an absolute nullity, which may be collaterally attacked in this appeal. See La. C.C.P. art. 2002(A)(2) ("A final judgment shall be annulled if it is rendered … [a]gainst a defendant … whom a valid default judgment has not been taken."). See also *Bernard v. Fireside Commercial Life Ins. Co.*, 633 So.2d 177, 184 (La. App. 1st Cir. 1993), writ denied, 93-3170 (La. 3/11/94), 634 So.2d 839 ("A judgment is an absolute nullity if any of [the] vices of form [set forth in Article 2002(A)] exists, and may be attacked collaterally at any time.").

Accordingly, because the March 15, 2024 default judgment is an absolute nullity, it is vacated. The matter is remanded.

**DECREE**

For these reasons, we affirm the trial court's interlocutory rulings, which overruled DRH's dilatory exception of prematurity or alternative peremptory exception of no cause of action. The default judgment issued on March 15, 2024 is vacated. We remand for further proceedings consistent with this opinion. Appeal costs are assessed one-half to D.R. Horton, Inc. – Gulf Coast, and one-half to Southeast Dirt, L.L.C.

**INTERLOCUTORY RULINGS AFFIRMED; DEFAULT JUDGMENT VACATED. REMANDED.**